JENNIFER LIESER, ESQ. (State Bar No. 313707)
NINA MARINO, ESQ. (State Bar No. 142815)
MORIAH RADIN, ESQ. (State Bar No. 260245)
COLLIN CATE, ESQ. (State Bar No. 365876)
KAPLAN MARINO, PC
1546 N. Fairfax Ave.
Los Angeles, CA 90046
Tel: (310) 557-0007
Fax: (310) 861-1776
E-mail: lieser@kaplanmarino.com
         marino@kaplanmarino.com
         radin@kaplanmarino.com
         cate@kaplanmarino.com

Attorneys for Defendant
SAMIR OUSMAN ALSHEIKH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SAMIR OUSMAN ALSHEIKH <br><br> Defendant. | Case No. 24-CR-00483-HDV <br><br> **OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE #7 TO PRECLUDE IMPEACHMENT OF GOVERNMENT EXPERT WITNESS JAY WESSELMANN RELATED TO *TANG V. UNITED STATES* (DKT. 162)** <br><br> Honorable Hernan D. Vera <br><br> Hearing Date: February 19, 2026 <br> Trial Date: March 2, 2026 |

# OPPOSITION

## I. INTRODUCTION

Defendant Samir Ousman Alsheikh respectfully submits this Opposition to the Government's Motion in Limine ("MIL") #7 to Preclude Impeachment of Government Expert Witness Jay Wesselmann Related to *Tang v. United States*. (Dkt. 162.) The government asks this Court to shield its expert, Jay Wesselmann, from legitimate cross-examination concerning the basis and reliability of his opinions, precisely the type of inquiry the Federal Rules of Evidence permit and the Constitution demands. Wesselmann is the USCIS Citizenship Branch Chief and the government's noticed expert to testify about the naturalization process and the materiality of false statements in connection with Count 6 against Alsheikh. (Dkt. 162 at 1.)

As the government explains, in *Tang v. United States*, Weselmann provided a declaration under penalty of perjury in response to certain assertions made by the Plaintiff that the government submitted to the court on July 4, 2024. That declaration was subsequently amended on March 18, 2025, and then amended again on June 6, 2025, to correct multiple errors. (*Id.*) Critically, during his deposition, Weselmann admitted that he had relied on a staff member and counsel for certain information summarized in his original declaration, without having personally reviewed the databases from which the information was collected. (*Id.* at Ex. 3.) Wesselmann's inclusion of unreviewed and erroneous information in a sworn declaration is appropriate and relevant credibility information for a jury to consider when evaluating Wesselmann's testimony in this matter.

## II. ARGUMENT

The government argues that the multiple and repetitive errors Wesselmann made were minor, non-substantive, not material and proactively corrected by the government. (Dkt. 162 at 2.) Because of this, the government argues *inter alia* that the *Tang* errors are not relevant to this matter and, pursuant to Rule 403, risk

confusing the issues. But the errors were not merely minor. The errors included incorrect dates, incorrect information about FBI background checks, and information he admittedly did not personally verify.

The errors in his declarations directly relate to his credibility as a witness and reliability as an expert witness. The jury has a right to evaluate whether a witness who signed multiple inaccurate declarations under penalty of perjury, requiring two separate corrections over nearly a year, and admitted he swore the accuracy of such statements "based on [his] personal knowledge and information" under penalty of perjury without first having reviewed the information himself, is credible when testifying about Alsheikh's immigration records. (Dkt. 162 at Exs. 1, 2, 3.)

The probative value of Weselmann's *Tang* declaration error and mistatements is significant because they directly relate to his ability to carefully review and analyze documents and his credibility as an expert witness on this trial's immigration matters. Confronting Wesselman with his prior false statements under penalty of perjury in connection with the immigration process would not confuse the jury. Instead, it is essential to the jury's assessment of Weselmann's reliability, particularly because he is offering expert testimony on the naturalization process and the materiality of false statements in connection with Count 6 against Alsheikh.

Second, and more fundamentally, the deposition testimony revealed a flawed methodology: Weselmann signed declarations under penalty of perjury based on information provided by others, without independently verifying the underlying data. Only after deposition questioning exposed this practice did he go back and "personally review[] the underlying support for the declaration." (Dkt. 162 at Ex. 3.) This same methodological concern applies here. If Weselmann's practice is to rely on information from staff and counsel rather than conducting independent review of USCIS systems and records himself, the jury is entitled to know this. His

opinions about the naturalization process and the materiality of statements on Alsheikh's N-400 application may rest on the same delegated foundation, a foundation the defense has every right to probe.

Third, any confusion is of the government's own making. The government chose to retain an expert who signed multiple erroneous sworn declarations and who admitted in deposition to not personally verifying the underlying data. If redirect examination is necessary to explain these matters, that is a consequence of the government's witness selection, not a basis for precluding legitimate cross-examination.

Finally, the government's motion, if granted, would impermissibly restrict defense counsel's ability to conduct meaningful cross-examination of an government expert witness, in violation of Alsheikh's Confrontation Clause rights, as well as his right to a fair trial. U.S. Const. Amend. V, VI. The right to confront witnesses encompasses the opportunity for effective cross-examination, which the Supreme Court has described as "the principal means by which the believability of a witness and the truth of his testimony are tested[,]" *Davis v. Alaska*, 415 U.S. 308, 316 (1974), and the right to impeach a witness with prior instances that demonstrate a lack of credibility or reliability. Limiting impeachment only to errors made during trial testimony, as the government proposes, would impermissibly restrict the defense's ability to challenge Weselmann's overall credibility. This Court should not permit such a restriction, in contravention of Alsheikh's Fifth and Sixth Amendment rights.

### III. CONCLUSION

For the foregoing reasons, Alsheikh respectfully requests that the Court deny the Government's Motion in Limine #7.

//

//

//

Dated: February 9, 2026

Respectfully submitted,

By: \_\_\_\_\_/s/_____
    JENNIFER LIESER
    NINA MARINO
    MORIAH RADIN
    COLLIN CATE
    Attorneys for Defendant
    Samir Ousman Alsheikh