# Exhibit B

KAPLAN | MARINO
kaplanmarino.com

August 21, 2026

**Via Email**

Michelle Wang
Presentence USPO
United States Probation Office
michelle_wang@cacp.uscourts.gov

Re: *USA v. Samir Ousman Alsheikh*– Case No. 2:24-CR-00483-HDV

Dear Officer Wang:

We write on behalf of our client, Samir Ousman Alsheikh, to object to the guideline selection and calculation set forth in the Presentence Investigation Report ("PSR") dated August 13, 2026. Specifically, we object to the Probation Office's application of U.S.S.G. § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint) as the base guideline for the torture counts (Counts One through Four) and its resulting offense-level calculation. As set forth below, the correct guideline is U.S.S.G. § 2A2.2 (Aggravated Assault), and the correct combined total offense-level is 33.

Together with this letter, we are providing you with a report prepared by Dr. Ermshar, detailing her neuropsychological evaluation of Mr. Alsheikh and conclusions. We ask that her findings be included in the final PSR.

## I. The Correct Guideline Is § 2A2.2, Not § 2A4.1

### A. The Statutory Index Framework

Because 18 U.S.C. § 2340A is referenced to more than one guideline section in Appendix A of the Sentencing Guidelines, the sentencing court must determine "which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. § 1B1.2, Application Note 1. The guideline sections referenced for § 2340A fall into three categories: (1) guidelines addressing torture resulting in death (§§ 2A1.1, 2A1.2, 2A2.1); (2) the kidnapping guideline (§ 2A4.1); and (3) the aggravated assault guideline (§ 2A2.2). (PSR ¶ 46.) The murder-related sections are inapplicable here. That narrows the dispute to § 2A2.2 versus § 2A4.1.

### B. The Offense Conduct Charged Is Aggravated Assault, Not Kidnapping

In determining the appropriate guideline, the first step is to "determine which of the referenced guideline sections is most appropriate for the offense conduct *charged* in the count of which the defendant was convicted." U.S.S.G. § 1B1.2 cmt. n.1 (emphasis added). The 2000

1546 N. Fairfax Avenue
Los Angeles, CA 90046
T 310.557.0007
F 310.861.1776

KAPLAN | MARINO

amendments to the Guidelines made it "explicitly clear that the initial selection of the offense guideline must be based only on the statute or offense of conviction rather than on the judicial findings of actual conduct not made by the jury." *United States v. Moreno*, 421 F.3d 1217 (11th Cir. 2005). The PSR's reliance on trial testimony about the duration and conditions of confinement in Wing 13 to transform this case into one governed by the kidnapping guideline runs afoul of the Guidelines.

This point was made explicit by the judge in *United States v. Correa*, No. 20-cr-00148-CMA, Sentencing Tr. (D. Colo. Aug. 22, 2025). *Correa* involved charges of torture under § 2340A by a member of The Gambian military. At sentencing, the *Correa* court rejected the PSR's application of § 2A4.1 and applied § 2A2.2. The court reasoned that the 2000 amendment made it clear that the court must look to the offense conduct as explained to and found by the jury. The judge examined the jury instruction on the torture counts, nearly identical to the instructions in this case, and concluded that there was no allegation of abduction, kidnapping, or unlawful transport. The court went on to the reject the government's reliance on *United States v. Roggio*, No. 18-cr-00097-RDM (M.D. Pa.) and *United States v. Belfast*, 611 F.3d 783 (11th Cir. 2010), the only other torture cases that had been sentenced before Correa, as "[n]either district court judge in *Belfast* or *Roggio* . . . explained how looking to trial evidence as opposed to just the language of the indictments was authorized under the guidelines. . . . This is especially true based on the sentencing commission's 2000 amendment[.]"*Correa*, No. 20-cr-00148-CMA, Sentencing Tr. At 16-17 (D. Colo. Aug. 22, 2025).

The same analysis applies with equal force here. The government charged Mr. Alsheikh with torture and conspiracy to commit torture. It did not charge him with kidnapping. The jury was not asked to find, and did not find, that Mr. Alsheikh kidnapped or unlawfully detained any victim. The PSR's reliance on trial testimony to bootstrap this offense into the kidnapping guideline is directly contrary to U.S.S.G. § 1B1.2. The intentional infliction of severe pain and suffering upon persons already in custodial control is the essence of aggravated assault under § 2A2.2, not the unlawful establishment of custody over free persons, which is the essence of kidnapping under § 2A4.1. The custodial relationship between Mr. Alsheikh and each victim arose from their status as prisoners already processed into the penal system — not from any abduction Mr. Alsheikh orchestrated.

In addition to the improper consideration of trial adduced evidence in determining the appropriate guideline, the PSR's rationale for applying § 2A4.1 rests on the premise that Mr. Alsheikh's ordering of inmates from one area of the prison to another, is sufficient to invoke the kidnapping guideline. That reasoning, carried to its logical conclusion, produces an absurd result: it would mean that any time a corrections officer orders an inmate transferred to a different wing, cell block, or solitary confinement unit, and then assaults the inmate at that location, the assault is transformed into a kidnapping. Ordering an inmate to a particular area of the facility is an exercise of existing custodial authority — it is not an act of seizure, abduction, or kidnapping within the meaning of 2A4.1. The distinction between §§ 2A2.2 and 2A4.1 would be effectively

KAPLAN | MARINO

eliminated in any institutional or custodial setting if merely directing an already-detained person to a different location within the same facility were sufficient to convert an assault into a kidnapping.

Even if it were appropriate to rely upon trial-adduced facts to select the appropriate guideline, the facts here are distinguishable from *Belfast*, the only torture case in which a Court of Appeal has affirmed the application of § 2A4.1 to a § 2340A torture conviction, and *United States v. Roggio*, a Middle District of Pennsylvania case that is currently on appeal to the Third Circuit.

In *Belfast*, the Eleventh Circuit's decision turned on findings that "there is absolutely no evidence in this record even suggesting that the seizure of Emmanuel's victims was lawful, or that any of his victims had violated, or were even suspected of violating, Liberian law," and that "[n]ot one of these victims was even charged with a crime or brought before a court." *Belfast*, 611 F.3d at 825–26. The *Belfast* victims were taken to "secret and remote locations that were not places of lawful detention — such as an abandoned house, a military officer's garage, and pits dug into the ground." *Id.* In *Roggio,* the superseding indictment alleged that Roggio directed Kurdish soldiers to abduct one of Roggio's employees, who threatened to disrupt Roggio's business, detain him against his will at a Kurdish military compound for approximately 39 days, and torture him during multiple interrogation sessions led by Mr. Roggio. *Roggio*, No. 18-cr-00097, Dkt. 122 (M.D. Pa. Feb. 15, 2022). None of that is true here. K.A.M., M.S., and N.S. were held within Syria's actual state penal system, Adra Prison, a large, publicly known civilian facility. The custodial relationship here arose from the victims' status as prisoners already processed into a functioning detention system, not from a clandestine abduction of the kind at issue in *Belfast* and *Roggio*. Wherever the torture occurred, Mr. Alsheikh, by operation of his position as the warden of Adra Prison, maintained custody and control over the inmates.

Lastly, the statutory penalty structure also supports a finding that 2A2.2 is the "most appropriate" guideline. *See* U.S.S.G. § 1B1.2, Application Note 1 (directing the court to determine which referenced guideline section is "most appropriate for the offense conduct charged in the count of which the defendant was convicted.".) Section 2A4.1's companion statutes in the Statutory Index (e.g., 18 U.S.C. §§ 1201, 351(b), 1751(b)) each involve the unlawful seizure of a victim to establish custody, and most carry penalties mirroring federal kidnapping (up to life imprisonment). By contrast, § 2340A's 20-year statutory maximum (absent a death result) aligns with the assault-referenced provisions in that same statutory family (e.g., 18 U.S.C. §§ 113(a)(1), 115(a), (b)(1), 351(e), 1751(e)), each of which is referred to § 2A2.2.

**II. The Correct Guidelines Calculation Under § 2A2.2**

Applying the correct guideline, the offense-level calculation for each torture count group proceeds as follows:

KAPLAN | MARINO

| Step | Provision | Level |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2A2.2(a) | 14 |
| Dangerous weapon "otherwise used" | § 2A2.2(b)(2)(B) | +4 |
| Degree of bodily injury is between that in (B) and (C) | § 2A2.2(b)(3)(E) | +6 |
| *Cumulative SOC cap* | | *(+10 max)* |
| **Adjusted Base + SOC** | | **24** |
| Aggravating role (organizer/leader, 5+ participants) | § 3B1.1(a) | +4 |
| Abuse of position of trust | § 3B1.3 | +2 |
| **Total Offense Level Per Torture Group** | | **30** |

Counsel agrees with the PSR's calculation of the guidelines for the immigration offenses and the grouping analysis resulting in a +3. With a combined total offense level of 33 and criminal history category I, the advisory guidelines range is **135 to 168 months**.

By contrast, the PSR's application of § 2A4.1 produces a base offense level of 32, cumulative specific offense characteristics of +8, and a role adjustment of +6 — resulting in adjusted offense levels of 44 to 46 per torture group, a combined adjusted offense level of 49, and a capped total offense level of 43 with an advisory sentence of 1,200 months (life imprisonment). The difference between the PSR's calculation and the correct calculation under § 2A2.2 — a total offense level of 33 yielding a range of 135 to 168 months versus a capped level of 43 yielding life imprisonment — demonstrates the fundamental importance of this guideline-selection question.

**III. Conclusion**

For the foregoing reasons, we respectfully request that the Probation Office revise the PSR to apply U.S.S.G. § 2A2.2 as the base guideline for the torture counts (Counts One through Four), and to recalculate the total offense level accordingly. The correct total offense level under § 2A2.2 is 33, yielding an advisory guidelines range of 135 to 168 months with Criminal History Category I.

KAPLAN | MARINO

Sincerely,

KAPLAN MARINO, P.C.

*Nina Marino*

NINA MARINO
MORIAH RADIN
COLLIN CATE

Cc:
Joshua O. Mausner, Assistant United States Attorney
joshua.mausner@usdoj.gov

Patrick Jasperse, Trial Attorney
patrick.jasperse@usdoj.gov

DR. ERMSHAR REPORT NOT ATTACHED

PLEASE SEE EXHIBIT C, ATTACHMENT 5,

FILED UNDER SEAL